Attorney or Party Name, Address, Telephone & FAX Numbers, and California State Bar Number

Ehsan Afaghi, SBN 92481
Law Offices of Ehsan Afaghi
170 S. Beverly Drive, Suite 315
Beverly Hills, CA 90212
Tel. 310/278-8050
Fax. 310/278-2330

FOR COURT USE ONLY

RECEIVED

MAY - 5 2009

CLERK U.S. BANKRUPTCY COURT
CENTRAL DISTRICT OF CALIFORNA
BY _____ Deputy Clerk

*Attorney for Plaintiff* 87th Peoria, LLC

## UNITED STATES BANKRUPTCY COURT
## CENTRAL DISTRICT OF CALIFORNIA

In re:
Ezri Namvar

Debtor.

CHAPTER  11

CASE NUMBER  2:08-bk-32349-BR

ADVERSARY NUMBER

87th Peoria, LLC, an Arizona limited liability company

Plaintiff(s),

vs.

Ezri Namvar, an individual and DOES 1 through 50, inclusive,

Defendant(s).

*(The Boxes and Blank Lines below are for the Court's Use Only) (Do Not Fill Them In)*

## SUMMONS AND NOTICE OF STATUS CONFERENCE

TO THE DEFENDANT: A Complaint has been filed by the Plaintiff against you. If you wish to defend yourself, you must file with the Court a written pleading, in duplicate, in response to the Complaint. You must also send a copy of your written response to the party shown in the upper left-hand corner of this page. Unless you have filed in duplicate and served a responsive pleading by _____, the Court may enter a judgment by default against you for the relief demanded in the Complaint.

A Status Conference on the proceeding commenced by the Complaint has been set for:

| Hearing Date: | Time: | Courtroom: | Floor: |
|---|---|---|---|

☒  **255 East Temple Street, Los Angeles**

☐  **21041 Burbank Boulevard, Woodland Hills**

☐  **3420 Twelfth Street, Riverside**

☐  **411 West Fourth Street, Santa Ana**

☐  **1415 State Street, Santa Barbara**

PLEASE TAKE NOTICE that if the trial of the proceeding is anticipated to take less than two (2) hours, the parties may stipulate to conduct the trial of the case on the date specified, instead of holding a Status Conference. Such a stipulation must be lodged with the Court at least two (2) Court days before the date set forth above and is subject to Court approval. The Court may continue the trial to another date if necessary to accommodate the anticipated length of the trial.

Date of Issuance: _____

**JON D. CERETTO**
**Clerk of the Bankruptcy Court**

By: _____
*Deputy Clerk*

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*January 2009 (COA-SA)*

**F 7004-1**

Summons and Notice of Status Conference - *Page 2*

**F 7004-1**

| In re<br>Ezri Namvar | (SHORT TITLE) | CASE NO.: 2:08-bk-32349-BR |
|---|---|---|
| | Debtor(s). | |

**NOTE**: When using this form to indicate service of a proposed order, **DO NOT** list any person or entity in Category I. Proposed orders do not generate an NEF because only orders that have been entered are placed on a CM/ECF docket.

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:

A true and correct copy of the foregoing document described as _____ _____ will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d), and **(b)** in the manner indicated below:

**I. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")** - Pursuant to controlling General Order(s) and Local Bankruptcy Rule(s) ("LBR"), the foregoing document will be served by the court via NEF and hyperlink to the document.  On _____ I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following person(s) are on the Electronic Mail Notice List to receive NEF transmission at the email addressed indicated below:

☐ Service information continued on attached page

**II. SERVED BY U.S. MAIL OR OVERNIGHT MAIL** (indicate method for each person or entity served):
On _____ I served the following person(s) and/or entity(ies) at the last known address(es) in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States Mail, first class, postage prepaid, and/or with an overnight mail service addressed as follow.  Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

**III. SERVED BY PERSONAL DELIVERY, FACSIMILE TRANSMISSION OR EMAIL** (indicate method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on _____ I served the following person(s) and/or entity(ies) by personal delivery, or (for those who consented in writing to such service method) by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| Date | Type Name | Signature |
|---|---|---|

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*January 2009 (COA-SA)*

**F 7004-1**

Summons and Notice of Status Conference  - *Page 3*

**F 7004-1**

| In re<br>Ezri Namvar | (SHORT TITLE)<br><br>Debtor(s) | CASE NO.: 2:08-bk-32349-BR |
|---|---|---|

**ADDITIONAL SERVICE INFORMATION** (if needed):

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*January 2009 (COA-SA)*

**F 7004-1**

FORM B104  (08/07)                                                                            2007 USBC, Central District of California

| ADVERSARY PROCEEDING COVER SHEET<br>(Instructions on Page 2) | ADVERSARY PROCEEDING NUMBER<br>(Court Use Only) |
|---|---|

| **PLAINTIFFS**<br>87th Peoria, LLC | **DEFENDANTS**<br>Ezri Namvar |
|---|---|

| **ATTORNEYS** (Firm Name, Address, and Telephone No.)<br>Ehsan Afaghi, 170 S. Beverly Dr<br>#315, BH, Ca 90212 | **ATTORNEYS** (If Known) |
|---|---|

RECEIVED

MAY 05 2009

CLERK U.S. BANKRUPTCY COURT
CENTRAL DISTRICT OF CALIFORNIA
BY _____ Deputy Clerk

| **PARTY** (Check One Box Only)<br>☐ Debtor    ☐ U.S. Trustee/Bankruptcy Admin<br>☐ Creditor    ☒ Other<br>☐ Trustee      Theft Victim | **PARTY** (Check One Box Only)<br>☒ Debtor    ☐ U.S. Trustee/Bankruptcy Admin<br>☐ Creditor    ☐ Other<br>☐ Trustee |
|---|---|

**CAUSE OF ACTION** (WRITE A BRIEF STATEMENT OF CAUSE OF ACTION, INCLUDING ALL U.S. STATUTES INVOLVED)
Fraud, conversion, breach of fiduciary duty & aiding & abetting breach
of fiduciary duty, breach of contract, breach of covenant good faith,
unlawful business practices, unjust enrichment, constructive trust, etc.

## NATURE OF SUIT
(Number up to five (5) boxes starting with lead cause of action as 1, first alternative cause as 2, second alternative cause as 3, etc.)

**FRBP 7001(1) – Recovery of Money/Property**
☐ 11-Recovery of money/property - §542 turnover of property
☐ 12-Recovery of money/property - §547 preference
☐ 13-Recovery of money/property - §548 fraudulent transfer
☐ 14-Recovery of money/property - other

**FRBP 7001(2) – Validity, Priority or Extent of Lien**
☐ 21-Validity, priority or extent of lien or other interest in property

**FRBP 7001(3) – Approval of Sale of Property**
☐ 31-Approval of sale of property of estate and of a co-owner - §363(h)

**FRBP 7001(4) – Objection/Revocation of Discharge**
☐ 41-Objection / revocation of discharge - §727(c),(d),(e)

**FRBP 7001(5) – Revocation of Confirmation**
☐ 51-Revocation of confirmation

**FRBP 7001(6) – Dischargeability**
☐ 66-Dischargeability - §523(a)(1),(14),(14A) priority tax claims
☒ 62-Dischargeability - §523(a)(2), false pretenses, false
     representation, actual fraud
☒ 67-Dischargeability - §523(a)(4), fraud as fiduciary, embezzlement,
     larceny

**(continued next column)**

**FRBP 7001(6) – Dischargeability (continued)**
☐ 61-Dischargeability - §523(a)(5), domestic support
☒ 68-Dischargeability - §523(a)(6), willful and malicious injury
☐ 63-Dischargeability - §523(a)(8), student loan
☐ 64-Dischargeability - §523(a)(15), divorce or separation obligation
     (other than domestic support)
☐ 65-Dischargeability - other

**FRBP 7001(7) – Injunctive Relief**
☐ 71-Injunctive relief – imposition of stay
☐ 72-Injunctive relief – other

**FRBP 7001(8) Subordination of Claim or Interest**
☐ 81-Subordination of claim or interest

**FRBP 7001(9) Declaratory Judgment**
☐ 91-Declaratory judgment

**FRBP 7001(10) Determination of Removed Action**
☐ 01-Determination of removed claim or cause

**Other**
☐ SS-SIPA Case – 15 U.S.C. §§78aaa et.seq.
☐ 02-Other (e.g. other actions that would have been brought in state
     court if unrelated to bankruptcy case)

| ☐ Check if this case involves a substantive issue of state law | ☐ Check if this is asserted to be a class action under FRCP 23 |
|---|---|
| ☒ Check if a jury trial is demanded in complaint | Demand $  872,378.00 |

Other Relief Sought  –     dischargeability - Plaintiff's money was stolen from a
26 USC Section 1031 Exchange account and is not property of the
Bankruptcy Estate; injunction / stay / construction trust / accounting

FORM B104 (08/07), page 2                                                      2007 USBC, Central District of California

| BANKRUPTCY CASE IN WHICH THIS ADVERSARY PROCEEDING ARISES | |
|---|---|
| **NAME OF DEBTOR**<br>Ezri Namvar | **BANKRUPTCY CASE NO.**<br>2:08-bk-32349-BR |

| DISTRICT IN WHICH CASE IS PENDING | DIVISIONAL OFFICE | NAME OF JUDGE |
|---|---|---|
| Central | | Barry Russell |

| RELATED ADVERSARY PROCEEDING (IF ANY) | | |
|---|---|---|
| **PLAINTIFF** | **DEFENDANT** | **ADVERSARY PROCEEDING NO.** |

| DISTRICT IN WHICH ADVERSARY IS PENDING | DIVISIONAL OFFICE | NAME OF JUDGE |
|---|---|---|

**SIGNATURE OF ATTORNEY (OR PLAINTIFF)**

| DATE | PRINT NAME OF ATTORNEY (OR PLAINTIFF) |
|---|---|
| 4-29-09 | Ehsan Afaghi |

## INSTRUCTIONS

The filing of a bankruptcy case creates an "estate" under the jurisdiction of the bankruptcy court which consists of all of the property of the debtor, wherever that property is located. Because the bankruptcy estate is so extensive and the jurisdiction of the court so broad, there may be lawsuits over the property or property rights of the estate. There also may be lawsuits concerning the debtor's discharge. If such a lawsuit is filed in a bankruptcy court, it is called an adversary proceeding.

A party filing an adversary proceeding must also must complete and file Form 104, the Adversary Proceeding Cover Sheet, unless the party files the adversary proceeding electronically through the court's Case Management/Electronic Case Filing system (CM/ECF). (CM/ECF captures the information on Form 104 as part of the filing process.) When completed, the cover sheet summarizes basic information on the adversary proceeding. The clerk of court needs the information to process the adversary proceeding and prepare required statistical reports on court activity.

. The cover sheet and the information contained on it do not replace or supplement the filing and service of pleadings or other papers as required by law, the Bankruptcy Rules, or the local rules of court. The cover sheet, which is largely self-explanatory, must be completed by the plaintiff's attorney (or by the plaintiff if the plaintiff is not represented by an attorney). A separate cover sheet must be submitted to the clerk for each complaint filed.

**Plaintiffs** and **Defendents.** Give the names of the plaintiffs and defendants exactly as they appear on the complaint.

**Attorneys.** Give the names and addresses of the attorneys, if known.

**Party.** Check the most appropriate box in the first column for the plaintiffs and the second column for the defendants.

**Demand.** Enter the dollar amount being demanded in the complaint.

**Signature.** This cover sheet must be signed by the attorney of record in the box on the second page of the form. If the plaintiff is represented by a law firm, a member of the firm must sign. If the plaintiff is pro se, that is, not presented by an attorney, the plaintiff must sign.

Ehsan Afaghi, SBN 92481
LAW OFFICES OF EHSAN AFAGHI
170 S. Beverly Drive
Suite 315
Beverly Hills, CA 90212
Telephone 310-278-8050  Fax 310-278-2330
E-Mail Afaghi@pacbell.net

Attorney for Plaintiff
87TH PEORIA, LLC

FILED
MAY 05 2009
CLERK U.S. BANKRUPTCY COURT
CENTRAL DISTRICT OF CALIFORNIA
BY_____ Deputy Clerk

# UNITED STATES BANKRUPTCY COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re:<br><br>EZRI NAMVAR<br><br>        Debtor.<br><br>87TH PEORIA, LLC, an Arizona Limited Liability Company,<br><br>        Plaintiff,<br><br>        vs.<br><br>EZRI NAMVAR, an individual and DOES 1 THROUGH 50, Inclusive,<br><br>        Defendants. | BK Case No.:  2:08-bk-32349-BR<br>Chapter 11<br><br>Adversary Case No.<br><br>**COMPLAINT FOR:**<br><br>**1.    FRAUD;**<br>**2.    CONVERSION;**<br>**3.    BREACH OF FIDUCIARY DUTY AND AIDING AND ABETTING BREACH OF FIDUCIARY DUTY;**<br>**4.    BREACH OF CONTRACT;**<br>**5.    BREACH OF COVENANT OF GOOD FAITH AND FAIR DEALING;**<br>**6.    UNLAWFUL BUSINESS PRACTICES;**<br>**7.    UNJUST ENRICHMENT;**<br>**8.    CONSTRUCTIVE TRUST;**<br>**9.    ACCOUNTING;**<br>**10.    DECLARATORY RELIEF;**<br>**11.    NONDISCHARGEABILITY OF DEBT PURSUANT TO 11 U.S.C. SECTION 523(a)(2)(A);**<br>**12.    NONDISCHAGEABILITY OF DEBT PURSUANT TO 11 U.S.C. SECTION 523(a)(4);**<br>**13.    NONDISCHARGEABILITY OF DEBT PURSUANT TO 11 U.S.C. SECTION 523(a)(6)**<br><br>[Demand for Jury Trial] |

1    COMES NOW, Plaintiff 87TH PEORIA ("Plaintiff"), who alleges as follows:

## JURISDICTION AND VENUE

1.    Plaintiff is information and believes and based thereon alleges that on or about December 19, 2008, an involuntary petition under 11 U.S.C. §33 was filed against defendant/debtor Ezri Namvar ("Namvar") imposing an automatic stay in Bankruptcy Case Number 2:08-bk-32349-BR, entitled In re Ezri Namvar, in the United States Bankruptcy Court, Central District of California.

2.    This Court has jurisdiction of this adversary proceeding and Complaint pursuant to 28 U.S.C. §§157 and 1334. This matter is a core proceeding and jurisdiction of this Court is based upon the provisions of 28 U.S.C. §§157(b) and 1334.

3.    Venue for this Adversary Proceeding is proper in the Central District of California, Los Angeles Division, because the underlying Chapter 11 case was filed in this Central District, Los Angeles Division. Additionally, the managing member of Plaintiff, as well as Namvar, resides in the Central District, Los Angeles.

## THE PARTIES

4.    Plaintiff is, and at all times mentioned herein was, an Arizona limited liability company duly organized and existing under the laws of the State of Arizona and doing business in the County of Los Angeles, State of California.

5.    Plaintiff is informed and believes, and based thereon alleges, that Namvar is an individual residing in Beverly Hills, California, and is, on information and belief, an owner or principal and officer or director of Namco Financial Exchange Corporation ("Namco Exchange").

6.    Upon information and belief, Namvar formed Namco Exchange with the intention of avoiding personal liability for the financial scheme described herein. Plaintiff is informed and, on that basis alleges, that Namvar used Namco Exchange as an alter ego by, among other things:

a.    Commingling personal and corporate funds and other assets;

b.    Diverting corporate funds and/or assets to uses other than the benefit of the corporation or the satisfaction of its obligations and debts;

c.    Treating Namco Exchange's corporate assets as his own;

d.    Failing to maintain separate and adequate corporate records;

e.    Failing to capitalize Namco Exchange adequately;

f.    Using Namco Exchange as a mere shell, instrumentality, or conduit for personal business activities; and

g.    Using Namco Exchange as a shield against personal liability or as a subterfuge for illegal transactions.

7.    Plaintiff is informed and believes, and based thereon alleges, that each of the defendants was the agent, alter ego, servant, co-conspirator and/or representative of each of the other remaining defendants and at all times herein relevant was acting within the authorized scope and course of said agency, conspiracy and employment and all of said acts, conduct or omissions were subsequently ratified by the respective principals and accepted by the principals of the defendants.

8.    .   Plaintiff is informed and believes, and based thereon alleges, that each defendant was the agent, employee, servant, partner or co-conspirator of each of the other defendants or is in some other manner legally liable for the conduct and damages at issue in this action and was acting within the scope of one or more of such relationships and with the direct or implied knowledge, consent or ratification of each of the other defendants.

## GENERAL ALLEGATIONS

9.    Plaintiff is informed and believes and based thereon alleges that this case arises from a "Ponzi" scheme perpetrated by Namvar through an inadequately capitalized sham corporation called Namco Exchange.  Through this scheme, in which Namvar and Namco Exchange purported to act as a "qualified intermediary" in deferred exchanges pursuant to United States Internal Revenue Code §1031 (26 U.S.C. §1031) (hereinafter "Section 1031"), Namvar and Namco Exchange stole $872,378 from Plaintiff, and potentially many more millions from other similarly situated.

10.    Plaintiff is informed and believes and based thereon alleges that the following actions have been filed against Namvar and Namco Exchange based on similar fraudulent conduct by Namvar and Namco Exchange:

(a)    Paul Laska, et al v. Namco Financial Exchange Corp, et al, Los Angeles Superior Court Case Number: BC404612;

(b)    Holly Getlin, et al v. Namco Financial Exchange Corp, et al, Los Angeles Superior Court Case Number: BC401927;

1      (c)    <u>Drivers Way Investment, LLC v. Ezri Namvar and Namco Financial</u>

2  <u>Exchange Corp., et al</u>, Los Angeles Superior Court Case Number: BC406512;

3      (d)    <u>La Crescenta Foothill Investment, LLC v. Ezri Namvar and Namco</u>

4  <u>Financial Exchange Corp., et al</u>, Los Angeles Superior Court Case Number: BC406513.

5      11.    Plaintiff is informed and believes and based thereon alleges that Namvar

6  and Namco Exchange, at all times relevant hereto, did not run a legitimate Section 1031

7  exchange operation, and had no interest or desire in honoring the legal obligations

8  incurred in that role.  Instead, Namco Exchange was nothing more than Namvar's vehicle

9  to operate an illegal "Ponzi" scheme, which was intended to, and did, bilk unsuspecting

10  investors out of millions of dollars of deposited funds to provide Namvar with capital to

11  engage in other risky investments.  Despite contractually agreeing to maintain Plaintiff's

12  exchange proceeds in a "nationally insured bank or savings institution," Namvar instead

13  used Plaintiff's deposited funds for his own risky investments, making the funds

14  unavailable to accomplish the Section 1031 exchange for which they were deposited.

## TAX DEFERRED EXCHANGES GENERALLY

15      12.    In a typical real property sale, the selling party is taxed on any gain realized

16  from the sale of that property.  In a Section 1031 Exchange, however, the tax on any gain

17  is deferred until some future date.

18      13.    A tax deferred exchange is a method by which a property owner (or

19  "exchanger") exchanges properties of "like-kind" by reinvesting the proceeds of the sale

20  of one property (the "relinquished property") in another property (the "replacement

21  property") of equal or greater value within a 180-day period (the "Exchange Period").  In

22  this matter, the exchanger realizes no capital gain on the sale of the relinquished property,

23  and defers the payment of certain taxes.

24      14.    In order to obtain the full tax benefit afforded by Section 1031, a deferred

25  exchange must be structured so that an exchanger's interest in the relinquished property, is

26  assigned to a "qualified intermediary," as that term is defined by United States Treasury

27  Regulation section 1031.1031(k)-1(g)(4)(iii) (the "Qualified Intermediary"), prior to the

28  close of the sale of the relinquished property.

    15.    A Qualified Intermediary is formally defined as an independent person

who enters into a written agreement (the "exchange agreement") with the exchanger and,

COMPLAINT

as required by the exchange agreement, acquires the relinquished property from the exchanger, transfers the relinquished property to its purchaser, acquires the replacement property with the proceeds of the sale of the relinquished property, and transfers the replacement property to the exchanger.

16.    In order to take advantage of a tax deferred exchange, the exchanger's rights to receive, pledge, borrow or otherwise obtain the proceeds of the sale of the relinquished property is limited during the Exchange Period, i.e., the Qualified Intermediary is to hold those proceeds in trust and to use them only to acquire the replacement properties. As a consequence, in effect, a Qualified Intermediary acts as the exchanger's independent escrow agent for, among other things, the exchange proceeds and acquisition of replacement properties during the Exchange Period.

## PLAINTIFF'S USE OF NAMCO EXCHANGE
## AS A "QUALIFIED INTERMEDIARY"

17.    Plaintiff owned certain real property located at 4341 N. 24th Street, Phoenix, Arizona (the "Relinquished Property").

18.    Plaintiff sought to make a qualified tax deferred exchange for the Relinquished Property and arranged for Namco Exchange to act as a qualified intermediary as that term is defined in Treas. Reg. Sections 11031(k)-1(g)(4) for the exchange.

19.    On May 2, 2008, Plaintiff entered into an exchange agreement with Namco Exchange (the "Exchange Agreement"). (A copy of the exchange agreement is attached hereto as Exhibit "1" and is incorporated by this reference).

20.    By the terms of the Exchange Agreement, Namco Exchange agreed to act as a Qualified Intermediary for Plaintiff in connection with a deferred exchange of the Relinquished Property for replacement property(ies) to be identified by Plaintiff within the identification period defined in the Agreement (the "Identification Period").

21.    The Exchange Agreement provided:

"1.1    [Plaintiff] agrees to convey the Relinquished Property to [Namco Exchange] in consideration of, and in exchange for the conveyance by [Namco Exchange] to [Plaintiff] of other property (or properties) of like kind to be identified by [Plaintiff] and conveyed to [Namco Exchange] pursuant to Section 2 below. Such other property (or properties) is referred to in this Agreement as the 'Replacement Property.' [Namco Exchange]

1
2
3
agrees to convey the Relinquished Property to Buyer and to acquire the Replacement Property form the seller or sellers thereof (the "Seller"), on the terms and conditions in this Agreement, in furtherance of the exchange described above."

4
(Exhibit "1").

5
6
7
8
9
22.     Under the Exchange Agreement, the parties specifically agreed that any cash proceeds received from the conveyance of the Relinquished Property will be deposited with other funds in a general account or accounts of Namco Exchange with any nationally insured bank or savings institution, and may be transferred to any other such general account or accounts as directed by Namco Exchange.

10
11
12
13
14
23.     Section 5 of the Exchange Agreement further entitled Plaintiff to the benefit of all interest earned from the deposited Exchange Proceeds. Nothing in the Exchange Agreement permitted, Namco Exchange or Namvar to make any other use of the Exchange Proceeds, including using the proceeds to fund other investments or projects.

15
16
17
24.     Concurrently with the execution of the Exchange Agreement, Plaintiff executed an assignment agreement with Namco Exchange (the "Assignment Agreement"). (A copy of the assignment agreement is attached hereto as Exhibit "2" and is incorporated by this reference).

18
19
20
21
25.     In accordance with the Exchange Agreement, on September 10, 2008, Namvar and Namco Exchange acknowledged the receipt of proceeds of the sale of the Relinquished Property, totaling $872,378 (the "Exchange Proceeds"). (A copy of the acknowledgment is attached hereto as Exhibit "3" and is incorporated by this reference).

22
23
24
26.     Plaintiff identified the replacement property and opened escrow with Chicago Title. Plaintiff informed Chicago Title of the available 1031 exchange funds held by Namco Exchange. (A copy of the buyer's estimated settlement statement is attached hereto as Exhibit "4" and is incorporated by this reference).

25
26
27
27.     In or about October 2008, in accordance with the terms of the Exchange Agreement, Plaintiff authorized and directed Namco Exchange to transfer and release the Exchange Proceeds for the purpose of acquiring the replacement property.

28

COMPLAINT

1    28.    Notwithstanding this express authorization and direction by Plaintiff and

2    request from Chicago Title, Namco Exchange failed and refused to transfer those funds

3    and the purchase of that property was never completed.

4    29.    Plaintiff was informed by Namvar and Namco Exchange that Namco

5    Exchange did not wire the funds for the replacement property because Namvar had earlier

6    converted and misappropriated the Exchange Proceeds for his own personal use.

7    30.    Namco Exchange failed and refused to provide any exchange proceeds for

the Acquisition of the Replacement Property or to return to Plaintiff any of the Exchange

8    Proceeds from the sale of the Relinquished Property.

9    31.    By failing to maintain the Exchange Proceeds in a "nationally insured bank

10    or savings institution," and by illegally withdrawing, misappropriating, or stealing the

11    Exchange Proceeds from the Section 1031 account, Namvar, among other things: (1)

12    breached the Agreement; (2) misappropriated or stole Plaintiff's funds and Exchange

13    Proceeds for his own use; (3) breached the fiduciary duty he owed to Plaintiff; and (4)

14    engaged in an unfair, unlawful or fraudulent business practice within the meaning of

15    California Business and Professions Code §§17200 *et seq.*

16    32.    To date, despite Plaintiff's demands, Namvar has failed, refused or

neglected to return the Exchange Proceeds to Plaintiff.

17    **FIRST CAUSE OF ACTION FOR FRAUD AND INTENTIONAL**

18    **(AGAINST ALL DEFENDANTS)**

19    33.    Plaintiff hereby incorporates by reference each and every allegation of

20    paragraphs 1 through 32 as though fully set forth herein.

21    34.    Beginning in or about May 2008, Defendants made the following

22    misrepresentations and material omissions, among others, to Plaintiff:

23    Misrepresentations:

24    a.    Representing to Plaintiff, both expressly and through a continuous course

25    of conduct, that Namco Exchange was a legitimate exchange company and a Qualified

26    Intermediary for purposes of completing Section 1031 exchange transactions, when, upon

information and belief, Namco Exchange was nothing more than Defendants' vehicle for

27    converting the funds of others for personal investment purposes or to operate an illegal

28    financial scheme;

b.     Representing to Plaintiff, both expressly and through a continuous course of conduct, that the Exchange Proceeds were being held in trust and in a "nationally insured bank or savings institution," when, upon information and believe, Plaintiff's funds were misappropriated or stolen presumably for use for other purposes including Defendants' personal investments or the operation of an illegal financial scheme;

c.     Representing to Plaintiff, both expressly and through a continuous course of conduct, that the Exhange Proceeds were being held and used for legitimate business purposes consistent with the deferred exchange as contemplated by the agreement, when, as alleged above, they were not;

d.     Representing to Plaintiff, both expressly and through a continuous course of conduct, that, following deposit, the Exchange Proceeds would be and were immediately available for the purchase of Replacement Property(ies) identified by Plaintiff when, as alleged above, they were not;

Material omissions:

e.     At all pertinent times, Defendants failed to disclose that Namco Exchange was not a legitimate exchange company and a Qualified Intermediary, but, upon information and belief, was instead a sham corporation set up and used to generate capital for risky investments or the operation of an illegitimate financial scheme; and

f.     At all pertinent times, Defendants failed to disclose that, rather than maintain the Exchange Proceeds in the manner dictated by the agreement, upon information and belief, they had instead disposed of or misappropriated Plaintiff's Exchange Proceeds completely or in a manner that made such funds unlikely to be recovered and otherwise unavailable to Plaintiff to accomplish the purposes of the Section 1031 Exchange.

35.     Plaintiff is informed and believes and based thereon alleges that, at all times relevant herein, Defendants knowingly and willfully conspired with as yet un-identified additional defendants, by cooperation, encouragement, ratification, or otherwise, to defraud Plaintiff, as set forth herein.

36.     Plaintiff is informed and believes and based thereon alleges that when Defendants made these representations and material omissions, they knew them to be

1  false, fraudulent or deceptive, and made them with the intention to deceive and defraud

2  Plaintiff and to induce Plaintiff to act in reliance thereon.

3       37.    At the time the above misrepresentations and material omissions were

4  made, Plaintiff was ignorant of their falsity and believed them to be true.  Plaintiff's

5  reliance was reasonable because Defendants and Namco Exchange actively

6  misrepresented, suppressed, concealed and failed to disclose the truth.

7       38.    As a direct and proximate result of Defendants' false, fraudulent or

   deceptive acts, Plaintiff has sustained damages in an amount according to proof, but in no

8  event less than $872,378.

9       39.    Plaintiff is informed and believes and based thereon alleges that Namvar's

10  acts were undertaken with intent to defraud, were willful, wanton, malicious and

11  oppressive, and further alleges that these acts justify an award of exemplary and punitive

12  damages in a sum appropriate to punish Defendants and deter future similar conduct.

13  ## SECOND CAUSE OF ACTION FOR CONVERSION

14  ## (AGAINST ALL DEFENDANTS)

15       40.    Plaintiff hereby incorporates by reference each and every allegation of

16  paragraphs 1 through 39 as though fully set forth herein.

17       41.    By means of false, fraudulent and/or deceptive acts, Defendants, without

   Plaintiff's knowledge or consent, exercised dominion and control over, misappropriated,

18  converted or stole for their personal use and possession, the Exchange Proceeds, all of

19  which belong to Plaintiff in an amount not less than $872,378.

20       42.    Plaintiff is informed and believes and based thereon alleges that, at all

21  times relevant herein, Defendants knowingly and willfully conspired with as yet unknown

22  co-defendants, by cooperation, encouragement, ratification, or otherwise, to

23  misappropriate, convert, or steal the Exchange Proceeds, as set forth herein.

24       43.    Defendants' interference with Plaintiff's right to possess the Exchange

25  Proceeds has been substantial and has deprived Plaintiff of the entire value of the

26  Exchange Proceeds.

27       44.    As a proximate result of Defendants' wrongful conduct, Plaintiff has

   sustained damages in an amount according to proof, but in no event less than $872,378.

28

45.     Plaintiff is informed and believes and based thereon alleges that Defendants' acts were undertaken with intent to defraud, were willful, wanton, malicious and oppressive, and further alleges that these acts justify an award of exemplary and punitive damages in a sum appropriate to punish Defendants and deter future similar conduct.

## THIRD CAUSE OF ACTION FOR BREACH OF FIDUCIARY DUTY
## AND AIDING AND ABETTING BREACH OF FIDUCIARY DUTY
### (AGAINST ALL DEFENDANTS)

46.     Plaintiff hereby incorporates by reference each and every allegation of paragraphs 1 through 45 as though fully set forth herein.

47.     As the owner and chief executive officer of the Qualified Intermediary for Plaintiff, as that term is defined by the United States Treasury Regulations §1301.1030(k)-1(g)(4)(iii), Defendants had a relationship of trust and confidence with Plaintiff.  Defendants were obligated as a fiduciary to act with the highest duty of good faith and care, and were prohibited from placing their own interests ahead of the interests of Plaintiff.

48.     Plaintiff has performed all of its obligations, except to the extent any such obligations have been excused or discharged by Defendants' statements or conduct.

49.     Defendants have breached their fiduciary duties to Plaintiff by, among other things:

a.     Engaging in the misrepresentations or material omissions to Plaintiff which are set forth above;

b.     Misappropriating for their own purposes the Exchange Proceeds that were intended and supposed to be held in trust for Plaintiff in a "nationally insured bank or savings institution" for purposes of effectuating the Section 1031 exchange; and

c.     Actively concealing the fact that they had misappropriated, converted or stole the Exchange Proceeds for their personal use and possession.

50.     As a direct and proximate consequence of Defendants' wrongful conduct, Plaintiff has been damaged in an amount according to proof, but in no event less than $872,378.

51.     Plaintiff is informed and believes and based thereon alleges that Defendants' acts were undertaken with intent to defraud, were willful, wanton, malicious and oppressive,

1   and further alleges that these acts justify an award of exemplary and punitive damages in a

2   sum appropriate to punish Defendants and deter future similar conduct.

3   ## FOURTH CAUSE OF ACTION FOR BREACH OF CONTRACT

4   ### (AGAINST ALL DEFENDANTS)

5   52.    Plaintiff hereby incorporates by reference each and every allegation of

6   paragraphs 1 through 32 as though fully set forth herein.

7   53.    As of May 2009, Plaintiff and Namco Exchange entered into the Exchange

    Agreement.  Although not a signatory to that Exchange Agreement, Defendants were the

8   beneficiary of that Exchange Agreement through their ownership and operation of Namco

9   Exchange, which, as alleged above, is deemed to be undercapitalized alter ego of Defendants.

10  54.    Plaintiff has performed all conditions, covenants and promises required under

11  the Exchange Agreement, except those conditions, covenants and promises which have been

12  prevented or otherwise excused by Defendants' conduct.

13  55.    Defendants have materially breached the Exchange Agreement by:

14  a.    Failing to maintain the Exchange Proceeds in a "nationally insured bank or

15  savings institution" as required by the Exchange Agreement and, upon information and

16  belief, instead using the proceeds for Defendants' own personal investments or for the

    operation of an illegal Ponzi scheme;

17  b.    Failing and refusing to return to Plaintiff the Exchange Proceeds, despite

18  Plaintiff's request for the same.

19  56.    As a direct and proximate result of each of the above-identified breaches,

20  Plaintiff has sustained damaged in an amount according to proof, but in no event less than

21  $872,378.

22  ## FIFTH CAUSE OF ACTION FOR BREACH OF IMPLIED

23  ## COVENANT OF GOOD FAITH AND FAIR DEALING

24  ### (AGAINST ALL DEFENDANTS)

25  57.    Plaintiff hereby incorporates by reference each and every allegation of

26  paragraphs 1 through 32 and 47 through 56 as though fully set forth herein.

27  58.    As of May 2008, Plaintiff and Namco Exchange entered into the Exchange

28  Agreement.  Although not a signatory to that Exchange Agreement, Defendants wer the

1  beneficiary of that Exchange Agreement through their ownership and operation of Namco

2  Exchange, which, as alleged above, is deemed to be undercapitalized alter ego of Defendants.

3    59.    As with all agreements in the State of California, the Exchange Agreement

4  contains an implied covenant of good faith and fair dealing, pursuant to which each of the

5  parties thereto, including Defendants, agreed not to take any action to deprive the other

6  parties of the benefit of the Exchange Agreement.

     60.    Plaintiff has performed all conditions, covenants and promises required under

7  the Exchange Agreement, except those conditions, covenants and promises which have been

8  prevented or otherwise excused by Defendants' conduct.

9    61.    Notwithstanding Plaintiff's performance, Defendants have materially

10 breached the covenant of good faith and fair dealing by:

11   a.    Engaging in the misrepresentations or material omissions to Plaintiff as set

12 forth herein;

13   b.    Engaging in the conduct or omissions set forth herein; and

14   c.    Committing the breaches set forth herein.

15   62.    As a direct and proximate result of each of the above-identified breaches,

16 Plaintiff has sustained damaged in an amount according to proof, but in no event less than

   $872,378.

17

18        **SIXTH CAUSE OF ACTION FOR UNFAIR**

19        **AND FRAUDULENT BUSINESS PRACTICE**

          **(AGAINST ALL DEFENDANTS)**

20   63.    Plaintiff hereby incorporates by reference each and every allegation of

21 paragraphs 1 through 62 as though fully set forth herein.

22   64.    Defendants' actions as complained of herein were undertaken in the course of

23 business activities, and constitute one or more unfair, unlawful or fraudulent business

24 practices under California Business and Professions Code Sections 17200, *et seq.*

25   65.    By reason of Defendants' unfair, unlawful, or fraudulent business practices,

26 Plaintiff is entitled to full and immediate restitution of the balance of the Exchange Proceeds,

   as well as its attorneys' fees and costs in bringing and litigating this action.

27 ///

28 ///

-12-
COMPLAINT

## SEVENTH CAUSE OF ACTION FOR UNJUST ENRICHMENT
### (AGAINST ALL DEFENDANTS)

66.     Plaintiff hereby incorporates by reference each and every allegation of paragraphs 1 through 65 as though fully set forth herein.

67.     Plaintiff is informed and believes, and based thereon alleges, that, at all times relevant herein, Defendants knowingly and willfully conspired with other unknown defendants, by cooperation, encouragement, ratification, or otherwise, to misappropriate, convert or steal the Exchange Proceeds and defraud Plaintiff, as set forth herein.

68.     Through fraudulent, wrongful and illegal acts, Defendants were unjustly enriched at the expense of Plaintiff.  Plaintiff is entitled to recover the benefit, in an amount according to proof but in no event less than $872,378, unjustly appropriated by Defendants as described herein according to proof.

## EIGHTH CAUSE OF ACTION FOR CONSTRUCTIVE TRUST
### (AGAINST ALL DEFENDANTS)

69.     Plaintiff hereby incorporates by reference each and every allegation of paragraphs 1 through 68 as though fully set forth herein.

70.     Defendants have wrongfully acquired, and refused to return, the Exchange Proceeds.

71.     Through fraudulent and wrongful acts, Defendants has unjustly enriched themselves at the expense of Plaintiff.

72.     Defendants had thereby become a constructive trustee, on behalf of Plaintiff, of the Exchange Proceeds, and any other assets converted from Plaintiff.

73.     Plaintiff is informed and believes, and based thereon alleges, that certain of the assets converted from Plaintiff may reside with as-yet unknown third parties.

74.     Plaintiff seeks a judicial declaration establishing that Defendants shall hold the Exchange Proceeds, and any other converted monies or other assets, in trust for Plaintiff.

## NINTH CAUSE OF ACTION FOR ACCOUNTING
### (AGAINST ALL DEFENDANTS)

75.     Plaintiff hereby incorporates by reference each and every allegation of paragraphs 1 through 74 as though fully set forth herein.

76.     Under the Exchange Agreement, Plaintiff is entitled to the benefit of the full amount of the Exchange Proceeds as well as interest earned on those proceeds. In light of Defendants' failure to maintain the Exchange Proceeds in a "nationally insured bank or savings institution" as the Exchange Agreement provides, and Defendants' failure to account for the amount of any interest or profits earned on such proceeds, the precise amount of money owed by Defendants to Plaintiff is unknown and cannot be ascertained without an accounting.

77.     Plaintiff hereby demands, and has demanded, that Defendants account for the aforementioned monies and pay the amount due to Plaintiff.

78.     Despite such demands, Defendants have failed and refused, and continue to fail and refuse, to render any accounting – much less pay – Plaintiff the entire amount of monies due and owing.

## TENTH CAUSE OF ACTION FOR DECLARATORY RELIEF
### (AGAINST ALL DEFENDANTS)

79.     Plaintiff hereby incorporates by reference each and every allegation of paragraphs 1 through 78 as though fully set forth herein.

80.     By virtue of the foregoing matters, an actual controversy and dispute has arisen between Plaintiff and Defendants in that Plaintiff maintains that it has an absolute right to recovery of its funds in the Section 1031 accounts and Defendants refuses to return those funds.

81.     Plaintiff desires a judicial determination and declaration of the parties' respective rights and duties with the Exchange Agreement (or otherwise) and specifically desires a determination that Defendants are obligated to return all funds, with interest and any other applicable damages to Plaintiff.

82.     Such a declaration is necessary and appropriate at this time so that Plaintiff can determine its rights under the Exchange Agreement. Accordingly, Plaintiff requests that this Court adjudicate the controversy, the Exchange Agreement and issue a declaration of the rights, duties, and obligations of the parties under the Agreement.

83.     It is on this basis that Plaintiff seeks injunctive relief, including a temporary restraining order to show cause regarding the imposition of a preliminary and permanent

1   injunction to prevent further imminent erosion of their financial position as a result of

2   Defendants' ongoing Ponzi scheme.

### ELEVENTH CAUSE OF ACTION FOR NONDISCHARGEABILITY
### OF DEBT PURSUANT TO 11 U.S.C. §523(a)(2)(A)
### (AGAINST ALL DEFENDANTS)

84.    Plaintiff hereby incorporates by reference each and every allegation of

paragraphs 1 through 83 as though fully set forth herein.

85.    Plaintiff alleges that the obligations due and owing to Plaintiff by Defendants

are nondischargeable by reason of <u>Bankruptcy Code</u> §523(a)(2)(A), based upon the false

pretenses, false representations and actual fraud (that are other than a statement respecting

the debtor's or an insider's financial condition) as set forth in this Complaint.  On

information and belief, each of Defendants' inducements and representations were false and

were part of a larger illegal financial scheme and but for such false promises and

inducements and actual fraud, Plaintiff would not have placed its money in accounts directly

or indirectly controlled by Defendants.

86.    As a result of Defendants' false representations, as set forth in this Complaint,

Defendants received a benefit from Plaintiff in the amount of not less than $872,378 based

upon false pretenses, false representations and actual fraud.

87.    As a result of Defendants' false representations, Plaintiff was damaged in the

amount of not less than $872,378, plus interest accruing at ten percent (10%) per annum, to

the time of entry of judgment.

88.    Pursuant to <u>Bankruptcy Court</u> §523(a)(2)(A), the debt incurred by Defendants

to Plaintiff is nondischargeable.

### TWELFTH CAUSE OF ACTION FOR NONDISCHARGEABILITY
### OF DEBT PURSUANT TO 11 U.S.C. §523(a)(4)
### (AGAINST ALL DEFENDANTS)

89.    Plaintiff hereby incorporates by reference each and every allegation of

paragraphs 1 through 88 as though fully set forth herein.

90.    Plaintiff alleges that the obligations due and owing to Plaintiff by Defendants

are nondischargeable by reason of <u>Bankruptcy Court</u> §523(a)(4), based upon fraud or

defalcation while acting in a fiduciary capacity, embezzlement or larceny as set forth in this

-15-
COMPLAINT

1   Complaint. On information and belief, each of Defendants' inducements and representations

2   were false and were part of a larger illegal financial scheme and but for such false promises

3   and inducements and actual fraud, Plaintiff would not have placed its money in accounts

4   directly or indirectly controlled by Defendants.

5         91.    As s result of Defendants' fraud or defalcation while acting in a fiduciary

6   capacity, as set forth in this Complaint, Defendants received a benefit from Plaintiff in the

    amount of not less than $872,378.

7         92.    As s result of Defendants' fraud or defalcation while acting in a fiduciary

8   capacity, Plaintiff was damaged in the amount of not less than $872,378, plus interest

9   accruing at ten percent (10%) per annum, to the time of entry of judgment.

10        93.    Pursuant to <u>Bankruptcy Court</u> §523(a)(4), the debt incurred by Defendants to

11  Plaintiff is nondischargeable.

12  **THIRTEENTH CAUSE OF ACTION FOR NONDISCHARGEABILITY**

13  **OF DEBT PURSUANT TO 11 U.S.C. §523(a)(6)**

14  **(AGAINST ALL DEFENDANTS)**

15        94.    Plaintiff hereby incorporates by reference each and every allegation of

16  paragraphs 1 through 93 as though fully set forth herein.

17        95.    Plaintiff alleges that the obligations due and owing to Plaintiff by

    Defendants are nondischargeable by reason of <u>Bankruptcy Court</u> §523(a)(6), based upon

18  willful and malicious injury by Defendants to another entity or to the property of another

19  entity as set forth in this Complaint. On information and belief, each of Defendants'

20  inducements and representations, as well as Defendants' defalcation and theft/conversion,

21  was false and or unlawful and Defendants' knew or should have known at the time they

22  were false and unlawful, and were made by Defendants with the specific intent and

23  purpose of inducing Plaintiff to enter into a contract and/or to steal from Plaintiff.

24        96.    As a result of Defendants' false representations and theft/conversion, as set

25  forth in this Complaint, Defendants received a benefit from Plaintiff in the amount of not

    less than $872,378.

26        97.    As s result of Defendants' fraud or defalcation while acting in a fiduciary

27  capacity, Plaintiff was damaged in the amount of not less than $872,378, plus interest

28  accruing at ten percent (10%) per annum, to the time of entry of judgment.

98.     Pursuant to <u>Bankruptcy Court</u> §523(a)(6), the debt incurred by Defendants to Plaintiff is nondischargeable.

## **PRAYER FOR RELIEF**

**WHEREFORE**, PLAINTIFF prays for judgment as follows:

<u>AS TO THE FIRST CAUSE OF ACTION:</u>

1.     For compensatory damages in an amount not yet fully determined, but in no event less than $872,378;

2.     For consequential damages, including but not limited to the loss of all Section 1031 tax advantages or real estate profits, in an amount to be proven at trial;

3.     For punitive and exemplary damages in an amount to be proven at trial;

4.     For costs of suit incurred herein.

<u>AS TO THE SECOND CAUSE OF ACTION:</u>

1.     For compensatory damages in an amount not yet fully determined, but in no event less than $872,378;

2.     For consequential damages, including but not limited to the loss of all Section 1031 tax advantages or real estate profits, in an amount to be proven at trial;

3.     For punitive and exemplary damages in an amount to be proven at trial;

4.     For costs of suit incurred herein.

<u>AS TO THE THIRD CAUSE OF ACTION:</u>

1.     For compensatory damages in an amount not yet fully determined, but in no event less than $872,378;

2.     For consequential damages, including but not limited to the loss of all Section 1031 tax advantages or real estate profits, in an amount to be proven at trial;

3.     For punitive and exemplary damages in an amount to be proven at trial;

4.     For costs of suit incurred herein.

<u>AS TO THE FOURTH CAUSE OF ACTION:</u>

1.     For compensatory damages in an amount not yet fully determined, but in no event less than $872,378;

2.     For consequential damages, including but not limited to the loss of all Section 1031 tax advantages or real estate profits, in an amount to be proven at trial;

3.     For attorneys' fees, pursuant to agreement, and its costs of incurred herein.

COMPLAINT

AS TO THE FIFTH CAUSE OF ACTION:

    1.    For compensatory damages in an amount not yet fully determined, but in no event less than $872,378;

    2.    For consequential damages, including but not limited to the loss of all Section 1031 tax advantages or real estate profits, in an amount to be proven at trial;

    3.    For attorneys' fees, pursuant to agreement, and its costs of incurred herein.

AS TO THE SIXTH CAUSE OF ACTION:

    1.    For restitution of an amount not yet fully determined, but in no event less than $872,378;

    2.    For an order enjoining and restraining Defendants and all persons acting with, for or in concert with him from any further unlawful practices;

    3.    For attorneys' fees and costs of incurred herein. ·

AS TO THE SEVENTH CAUSE OF ACTION:

    1.    For restitution of an amount not yet fully determined, but in no event less than $872,378;

    2.    For an accounting;

    3.    For imposition of a constructive trust;

    4.    For disgorgement of all profits obtained by Defendants as a result of the fraudulent acts complained of herein;

    5.    For costs of suit incurred herein.

AS TO THE EIGHTH CAUSE OF ACTION:

    1.    For restitution of an amount not yet fully determined, but in no event less than $872,378;

    2.    For an accounting;

    3.    For imposition of a constructive trust;

    4.    For disgorgement of all profits obtained by Defendants as a result of the fraudulent acts complained of herein;

    5.    For costs of suit incurred herein.

AS TO THE NINTH CAUSE OF ACTION:

    1.    For restitution of an amount not yet fully determined, but in no event less than $872,378;

2.      For an accounting;

3.      For imposition of a constructive trust;

4.      For disgorgement of all profits obtained by Defendants as a result of the fraudulent acts complained of herein;

5.      For costs of suit incurred herein.

AS TO THE TENTH CAUSE OF ACTION:

1.      For restitution of an amount not yet fully determined, but in no event less than $872,378;

2.      A judicial determination that Plaintiff is entitled to recover all of its assets under the Exchange Agreement;

3.      Injunctive relief in the form a Temporary Restraining Order, as well as an Order to Show Cause regarding the imposition of a preliminary and permanent injunction (and the subsequent imposition of such injunctions), based on a determination that Plaintiff has no plain, speedy and adequate remedy at law to compel Defendants to cease wrongful conduct and return the funds stolen. Plaintiff is informed and believes that, unless restrained by this Court, Defendants will continue such wrongful conduct, all to Plaintiff's irreparable injury. Accordingly, Plaintiff seeks the above requested injunctive relief to prevent Defendants from further hiding, transferring or encumbering assets.

AS TO THE ELEVENTH CAUSE OF ACTION:

1.      For a determination of nondischargeability of debt against Defendants pursuant to 11 U.S.C. §523(a)(2)(A);

2.      For a judgment against Defendants in the principal amount of not less than $872,378, plus interest accruing at ten percent (10%) per annum until the time of entry of judgment.

3.      For an award of attorneys' fees and costs incurred herein for bringing this action and for the collection of a judgment of nondischargeability against Defendants.

AS TO THE TWELFTH CAUSE OF ACTION:

1.      For a determination of nondischargeability of debt against Defendants pursuant to 11 U.S.C. §523(a)(4);

1        2.      For a judgment against Defendants in the principal amount of not less than

2  $872,378, plus interest accruing at ten percent (10%) per annum until the time of entry of

3  judgment.

4        3.      For an award of attorneys' fees and costs incurred herein for bringing this

5  action and for the collection of a judgment of nondischargeability against Defendants.

    <u>AS TO THE THIRTEENTH CAUSE OF ACTION:</u>

6        1.      For a determination of nondischargeability of debt against Defendants

7  pursuant to 11 U.S.C. §523(a)(6);

8        2.      For a judgment against Defendants in the principal amount of not less than

9  $872,378, plus interest accruing at ten percent (10%) per annum until the time of entry of

10  judgment.

11        3.      For an award of attorneys' fees and costs incurred herein for bringing this .

12  action and for the collection of a judgment of nondischargeability against Defendants.

13  <u>ON ALL CAUSES OF ACTION:</u>

14        1.      For such other and further relief as the Court may deem just and proper.

15

16

17  Dated: April 29, 2009                   LAW OFFICES OF EHSAN AFAGHI

18

19                               By: _____

20                                 Ehsan Afaghi, Esq.

                                 Attorney For Plaintiff

21                                 87TH PEORIA, LLC

22

23

24

25

26

27

28

EXHIBIT *1*

Recycled  Stock # DO-25-SS

## EXCHANGE AGREEMENT

THIS EXCHANGE AGREEMENT (this "Agreement") is made and entered into as of May 2, 2008, by and between **87th PEORIA, LLC, an Arizona limited liability company**, as to an undivided **35.00% interest** (hereinafter referred to as "Exchanger"), and **NAMCO FINANCIAL EXCHANGE CORP., a California corporation** (hereinafter "Intermediary").

This Agreement is made and entered into with reference to the following facts:

A.   Exchanger is the present owner of certain rights in that certain real property located at and referred as **4341 N. 24th Street, Phoenix, Arizona** (hereinafter collectively referred to as the "Relinquished Property").

B.   Exchanger desires to make a qualified tax deferred exchange of the Relinquished Property for other property or properties of like kind pursuant to and in accordance with Section 1031 of the Internal Revenue Code, and the Treasury regulations promulgated thereunder ("Treasury Regulations").

C.   The Relinquished Property is the subject of that certain Purchase and Sale Agreement / Option Agreement (the "Purchase Agreement"), dated (Not Applicable) by and between Exchanger, as seller, and **SILVER DEVELOPMENTS, LLC, an Arizona limited liability company**, as buyer ("Buyer").

D.   Intermediary is willing to act as a "qualified intermediary", as that term is defined in Treasury Regulations Sections 11031 (k)- 1 (g)(4), in connection with Exchanger's exchange.

NOW THEREFORE, in consideration of the mutual covenants, conditions, and agreements set forth herein, and for other good and valuable consideration, the receipt and adequacy of which are hereby acknowledged, Exchanger and Intermediary hereby agree as follows:

## 1.  EXCHANGE OF PROPERTIES.

1.1   Exchanger agrees to convey the Relinquished Property to Intermediary in consideration of, and in exchange for the conveyance by Intermediary to Exchanger of other property (or properties) of like kind to be identified by Exchanger and conveyed to Intermediary pursuant to Section 2 below. Such other property (or properties) is referred to in this Agreement as the "Replacement Property." Intermediary agrees to convey the Relinquished Property to Buyer and to acquire the Replacement Property from the seller or sellers thereof (the "Seller"), on the terms and conditions in this Agreement, in furtherance of the exchange described above.

1.2.   Concurrently with the execution of this Agreement, Exchanger shall execute an Assignment Agreement ("Assignment"), which provides that Intermediary will succeed to all the contractual rights, and the contractual obligations of Exchanger to convey the Relinquished Property to Buyer, in connection with a tax-deferred exchange for Exchanger.

1

1.3    Intermediary shall convey or cause the conveyance of the Relinquished Property to Buyer pursuant to the terms of the Purchase Agreement. In order to facilitate the transfer of the Relinquished Property to Buyer, and to save additional transfer taxes and other costs, Exchanger shall convey and assign the Relinquished Property directly to Buyer on behalf of Intermediary.

## 2.    EXCHANGER'S TIME REQUIREMENTS

2.1    Exchanger acknowledges that, for the exchange transaction to qualify for deferral of gain under Internal Revenue Code Section 1031, Exchanger must satisfy the following time requirements, which shall be the sole responsibility of Exchanger:

a.  Exchanger must identify the Replacement Property before the expiration of the Identification Period (defined below); and

b.  Exchanger must receive the identified Replacement Property before the expiration of the Exchange Period (defined below).

2.2    Within forty-five (45) days following the conveyance of the Relinquished Property from Exchanger to Intermediary (the "Identification Period"), Exchanger shall identify the Replacement Property.

2.3    The Replacement Property shall be deemed identified only if it is designated as replacement property in a written document signed by the taxpayer and hand delivered, mailed, telecopied, or otherwise sent before the end of the Identification Period to either:

a.  The person obligated to transfer the Replacement Property to Exchanger; or

b.  Any other person involved in the exchange other than the Exchanger or a disqualified person as defined in Treasury Regulations Sections 1.1031 (k)(2), (k)(3) or (k)(4).

Replacement Property is deemed identified before the end of the Identification Period only if the requirements of this section are satisfied with respect to the Replacement Property. However, any Replacement Property that is received by Exchanger before the end of the Identification Period will, in all events, be treated as identified before the end of the Identification Period.

2.4    The period within which the taxpayer must receive the replacement property (the "Exchange Period") begins on the date on which the Relinquished Property sale escrow closes and ends at midnight on *the earlier of* one hundred eighty (180) days after the date on which the Relinquished Property sale escrow closes *or* the due date for the taxpayer's tax return for the taxable year in which the transfer of the relinquished property occurs. If there are multiple Relinquished Properties then the Exchange Period will begin on the date the first Relinquished Property escrow closes.

2

87th Peoria, LLC - 1031 Exchange
Relinquished Property: 4341 N. 24th Street, Phoenix, Arizona
Chicago Title Company - Escrow No. CT0801845A

3. ACQUISITION OF REPLACEMENT PROPERTY

3.1  Exchanger shall establish with the Seller of the identified Replacement Property the terms of acquisition thereof and shall provide Intermediary with the form of acquisition agreement acceptable to Exchanger. Intermediary shall thereafter accept an assignment of Exchanger's contract rights to purchase the Replacement Property.

3.2  Intermediary shall acquire the Replacement Property through procedures specified in the relevant acquisition agreement. Concurrent with the acquisition of the Replacement Property, Intermediary shall cause the transfer and conveyance thereof to Exchanger. In order to facilitate the transfer of the Replacement Property to Exchanger, and to save additional transfer taxes and other costs, Intermediary shall be deemed to have satisfied its obligations hereunder if it causes the Seller of any Replacement Property to convey title thereof directly to Exchanger rather than Intermediary first acquiring title and thereafter conveying it to Exchanger.

3.3  In no event shall Intermediary be required to make a cash payment for the acquisition of the Replacement Property, including all costs and expenses of such acquisition or acquisitions, in excess of the Exchange Proceeds, as defined below, to the extent they have then been received in cash by Intermediary from the sale of the Relinquished Property. All costs of acquiring the Replacement Property, including payments toward the purchase price and all other acquisition fees incident thereto shall be borne first from the Exchange Proceeds held by Intermediary under this Agreement and then, to the extent necessary, from the funds of Exchanger. Further, Intermediary shall not be required to assume any secured loan on the Replacement Property to be acquired or to execute a promissory note or other evidence of indebtedness in connection with such acquisition or acquisitions which might impose any liability upon Intermediary for repayment of such obligation continuing after the date of closing with respect to the Replacement Property

4. TERMINATION OF EXCHANGE.

4.1  Except as expressly provided herein, Exchanger shall have no right to request or receive anything other than like kind real property for the period beginning on the date the Relinquished Property is transferred to Buyer and ending at midnight on the last day of the Exchange Period. Exchanger shall therefore have no right, except as provided in Section 4.2, to receive, pledge, borrow, or otherwise obtain the benefits of money (including, without limitation, any interest income earned on the proceeds held in trust by Intermediary under this Agreement, as described in Section 20 below) or other property held by Intermediary under this Agreement prior to the end of the Exchange Period.

4.2  Exchanger shall have the right to require Intermediary to distribute the balance of the Exchange Proceeds upon the conditions set forth as follows:

(i)  After the expiration of the Identification Period, if Exchanger has not identified Replacement Property (pursuant to Section 2) by the end of the Identification Period; or

3

(ii)     If Exchanger has identified Replacement Property (pursuant to Section 2) <u>and</u> Exchanger has received all of the Replacement Property to which they are entitled to under this Agreement; <u>or</u>

(iii)    After the expiration of the Identification Period, if Exchanger has identified Replacement Property (pursuant to Section 2) <u>and</u> there has occurred after the end of the Identification Period, a material and substantial contingency that (1) relates to the deferred exchange, (2) is provided for in writing, <u>and</u> (3) is beyond the control of the Exchanger and of any disqualified person (as defined in Treasury Regulations 1.1031 (k)(2), (k)(3) or (k)(4)), other than the person obligated to transfer the Replacement Property to Exchanger.

Then Intermediary shall pay to Exchanger the amount equal to the balance of any unused Exchange Proceeds. In the event that Intermediary makes such cash payment to Exchanger at Intermediary's sole election as provided above, the Intermediary shall thereafter have no further obligation regarding the acquisition and conveyance of the Replacement Property. In the event Intermediary makes such cash payment to Exchanger, Exchanger agrees to receive such payment by company check of Intermediary. It is intended that the foregoing conditions be interpreted and imposed in a manner consistent with the limitations contained in Regulations Section 1.1031 (k)—1 (g)(6).

    4.3   Upon the expiration of the Exchange Period, Intermediary shall distribute to Exchanger a sum equal to any balance of the Exchange Proceeds that Intermediary has not already used to acquire Replacement Property for conveyance to Exchanger.

    5.   EXCHANGE PROCEEDS. On or immediately after the close of escrow for the conveyance of the Relinquished Property, the Escrow Holder, as defined below, will deposit with Intermediary funds and/or negotiable paper "Exchange Proceeds" representing the net proceeds from the sale of the Relinquished Property from Intermediary to Buyer. Exchanger and Intermediary expressly agree that any cash proceeds received from the conveyance of the Relinquished Property will be deposited with other funds in a general account or accounts of the Intermediary with any nationally insured bank or savings institution, and may be transferred to any other such general account or accounts as directed by Intermediary. Exchanger shall receive all interest earned on the Exchange Proceeds on deposit with Intermediary subject to payment of the Administrative Fee required pursuant to paragraph 20 of this Agreement.

    6.   ESCROW/CLOSING. The escrow for the transfer of the Relinquished Property has been established with **CHICAGO TITLE COMPANY**, located at 2555 e. Camelback Road, Suite 500, Phoenix, Arizona 85016; **Escrow Number: CT0801845A** ("Escrow Holder"). This Agreement shall be attached to any instructions prepared for such escrow and shall thereby be incorporated into and form a part of such instructions. The parties hereto, and each of them, covenant and agree to execute escrow instructions to the Escrow Holder consistent with the terms and provisions of this Agreement for the purpose of effecting transfer provided therein.

4

7.  CONFLICTING INSTRUCTIONS. Upon receipt of any conflicting instructions, Intermediary will no longer be obligated to take any action in connection with this transaction until further consistent instructions are received from the principals, and Intermediary is authorized to hold all moneys and/or instruments until otherwise directed, either by the principals' mutual written instructions or by final order of a court of competent jurisdiction. In the event of conflicting claims to any funds or other documents, Intermediary has the absolute right, at their election, to file an action interpleader requiring the principals to answer and litigate their several claims and rights amongst themselves.

8.  EXECUTION OF DOCUMENTS. All the parties agree to execute any and all additional documents and instruments necessary to carry out the terms of this Agreement.

9.  COUNTERPARTS. This Agreement may be executed in counterparts and shall be of the same force and effect as if one document had been signed by all parties.

10.  CONFLICT WITH PRIOR AGREEMENTS. If and to the extent that this Agreement is in conflict with any prior written agreement or understanding between the parties hereto, the terms of this Agreement shall prevail. No modification or waiver of the terms of the Agreement shall be valid unless made in a writing and signed by both parties.

11.  SURVIVAL. The terms of this Agreement shall survive the close of escrow and the delivery of the deed of the Relinquished Property to Intermediary or Buyer.

12.  TIME. Time is of the essence of this Agreement.

13.  BINDING. This Agreement shall inure to the benefit of, and shall be binding upon, the parties hereto, their estates, heirs, representatives, and assigns; provided, however, that neither Intermediary nor Exchanger shall have the right to assign, pledge, hypothecate, or transfer this Agreement or any of their respective rights hereunder without the prior written consent of the other, which may be withheld in the sole discretion of the party whose consent is sought.

14.  NOTICES. Any notice to be given hereunder shall be given by personal delivery or by depositing such notice in the United States Mail first class postage prepaid, or personal delivery, and addressed to the respective party at the following address:

Exchanger

87th Peoria, LLC
Attn:  Khoshrow Zarabi
[Address]

Tel:
Fax:  310-276-8691
Email:  AFREKO@sbcGlobal.net

5

<u>Intermediary</u>

Namco Financial Exchange Corp.
Attn:  Val Mitsue Muraoka
12121 Wilshire Boulevard, 1400
Los Angeles, CA 90025
Tel:   310-207-1000
Fax:   310-207-6308
Email: valm@namcocapital.com

15. NO AGENCY. Exchanger acknowledges that Intermediary is acting as a principal in all the transactions contemplated by this Agreement and in no way shall be deemed an agent of Exchanger. Intermediary shall not have any obligations to Exchanger as an agent of Exchanger nor shall Exchanger have any obligations to Intermediary as a principal of Intermediary.

16. ATTORNEYS FEES. Should suit be brought to enforce or interpret any part of this Agreement, the prevailing party shall be entitled to recover as an element of its costs and not as damages, reasonable attorneys fees to be fixed by the court.

17. INDEMNIFICATION AND ACKNOWLEDGMENTS. Exchanger shall and does hereby agree to hold Intermediary harmless and to indemnify Intermediary and its shareholders, officers, directors, employees, attorneys and representatives from any and all claims, expenses, losses, costs, taxes, and assessments of any nature or kind, and from any and all other claims whatsoever, expressed or implied, whether sounding in tort or in contract, that may be asserted against Intermediary now or in the future by any person (including, without limitation, Exchanger), firm, corporation, governmental agency or taxing authority that may arise out of or in connection with this Agreement, and/or any activity related to carrying out the terms of this Agreement, except only for any claim, expense, tax or assessment arising solely out of the gross negligence or willful misconduct of Intermediary. Exchanger has been advised and urged by Intermediary to obtain the advice and review of this Agreement and the entire transaction by an independent legal counsel and accountant regarding the legal and tax implications of the contemplated transaction, and all related documents and agreements, particularly those drafted, presented or produced by Intermediary. Exchanger has not relied, and will not rely, upon any statement or representations made by Intermediary. Exchanger has represented and warranted to Intermediary that Exchanger has consulted with its own attorney with regard to the transaction described in this Agreement, and that the proposed exchange, involving the Relinquished Property, is a valid and conforming exchange transaction as contemplated by the provisions of Internal Revenue Code section 1031 and the related Treasury Regulations. The indemnity provided for herein shall include any and all liability, directly or indirectly caused by the use, analysis, storage, transportation, disposal, release, threatened release, discharge or generation of hazardous materials to, in, on, under, about, or from the Relinquished Property or any Replacement Property as part of this exchange. Exchanger's obligations shall include without limitation, and whether foreseeable or unforeseeable, all damages, claims or liabilities to any person or any property whatsoever, including all costs of any required or necessary repair, cleanup, detoxification or decontamination of any said property or any improvements, and the preparation and implementation of any closure, remedial action or other required plans in

6

connection herewith.

18. NO WARRANTY REGARDING TAX CONSEQUENCES. INTERMEDIARY MAKES NO REPRESENTATIONS OR WARRANTY, NOR SHALL INTERMEDIARY BEAR ANY RESPONSIBILITY OR LIABILITY, CONCERNING THE FEDERAL OR STATE TAX CONSEQUENCES TO EXCHANGER OF THE TRANSACTION CONTEMPLATED HEREIN; INCLUDING, WITHOUT LIMITATION, THE STATUS OF ANY REPLACEMENT PROPERTY AS LIKE KIND PROPERTY OR THE QUALIFICATION OF THIS TRANSACTION AS A TAX-DEFERRED EXCHANGE PURSUANT TO SECTION 1031 OF THE INTERNAL REVENUE CODE OR APPLICABLE STATE TAX LAWS.

19. GOVERNING LAW. This Agreement shall be interpreted under and governed by the laws of the State of California.

20. FEE.   As consideration for Intermediary's services under this Agreement, Exchanger shall pay to Intermediary an Exchange Fee in the amount of SEVEN HUNDRED FIFTY AND NO/100 DOLLARS ($750.00). The Exchange Fee is non-refundable and shall be deducted from the proceeds received. This Exchange Fee is based on one relinquished property and one replacement property. If Exchanger is acquiring more than one replacement property, each additional replacement property shall costs an additional $200.00. This fee shall be deducted directly from your exchange account upon completion of the necessary documentation. In addition to the Exchange Fee, any and all out-of-pocket costs incurred by Intermediary in connection with the Relinquished Property Sale Escrow and the Replacement Property Sale Escrow shall be due and payable upon the close of the Relinquished Property Sale Escrow and the Replacement Property Sale Escrow.

21. AFFILIATION. Exchanger is aware that shareholders, officers and/or directors of Intermediary are also shareholders and directors of Network Bank USA, and that Intermediary may deposit funds received or held by Intermediary in connection with the exchange transaction described in this Agreement in one or more accounts at Network Bank USA, and that Intermediary may receive interest or other benefits in connection with such deposits, all of which may be different from, and/or may exceed, interest which Exchanger may receive on funds with respect to which it is the beneficial owner under the exchange transaction. Exchanger waives, and at all times will waive, all rights and claims that it may now or hereafter have in connection with, related to or otherwise arising out of the matters described in the preceding sentence.

22. JOINT AND SEVERAL. The obligations and liabilities of the parties comprising Exchanger, if more than one, are and shall be the joint and several obligations of each of them.

7

IN WITNESS WHEREOF, the parties have executed this Agreement as of the date first above written.

**EXCHANGER**

Date: _____        · **87ᵗʰ PEORIA, LLC,**
                          **an Arizona limited liability company**


By: _____
    Khoshrow Zarabi
Its:  Manager


        8 0 - 0110524
_____
Social Security or Tax Identification Number


**INTERMEDIARY**

**NAMCO FINANCIAL EXCHANGE CORP.,**
**a California corporation**


By: _____
    Hamid Taba
Its:  Controller


8

# EXHIBIT 2

Recycled  Stock # DO-25-SS

## ASSIGNMENT AGREEMENT

THIS ASSIGNMENT AGREEMENT (this "Assignment") is made and entered into by and between 87th PEORIA, LLC, an Arizona limited liability company, as to an undivided 35.00% interest (hereinafter referred to as "Assignor") NAMCO FINANCIAL EXCHANGE CORP., a California corporation (hereinafter "Assignee"), and SILVER DEVELOPMENTS, LLC, an Arizona limited liability company (hereinafter "Consenting Party"), with reference to the following:

A.    Assignor and Consenting Party are parties to that certain Purchase and Sale And Joint Escrow Instructions Agreement, and any amendments thereto (collectively, the "Purchase Agreement"), dated (Not Applicable), pursuant to which Assignor agreed to sell its interest and rights in that certain property commonly known as 4341 N. 24th Street, Phoenix, Arizona (collectively, the "Property").

B.    Concurrently with the execution of this Agreement, Assignor and Assignee have executed an Exchange Agreement (the "Exchange Agreement"), by which Assignee has agreed to act as a "qualified intermediary," as that term is used in the regulations promulgated under Internal Revenue Code section 1031, to facilitate Assignor's exchange transaction.

C.    Assignor desires to assign Assignor's rights and obligations under the Purchase Agreement to Assignee, so that Assignee can complete its obligation under the Exchange Agreement to convey Assignor's interest in the Property to Consenting Party, on the terms and conditions set forth in this Assignment.

NOW, THEREFORE, in consideration of the mutual covenants, conditions, and agreements set forth herein, and for other good and valuable consideration, the receipt and adequacy of which are hereby acknowledged, the parties mutually agree as follows:

1.    Assignor hereby assigns to Assignee all of its right, title and interest in and under the Purchase Agreement, and Consenting Party does hereby consent to such Assignment, acknowledging, however that such consent does not relieve Assignor from any of its obligations under the Purchase Agreement. Subject to the provisions of this Assignment and of the Exchange Agreement, Assignee hereby accepts the assignment of all of such rights, title and interest in, and of the obligations under, the Purchase Agreement. The Purchase Agreement is hereby assigned in accordance with the terms hereof.

2.    Assignee's obligation to transfer the Property to Consenting Party and Assignee's acceptance of the assignment of the obligations of Assignor under the Purchase Agreement is conditioned upon, prior to transfer of the Relinquished Property to Assignee, the conveyance of the Property to Assignee by Assignor pursuant to the provisions of the Exchange Agreement between Assignee and Assignor.

1

3.    Assignee shall convey or cause the conveyance of the Property to Consenting Party pursuant to the terms of the Purchase Agreement. Notwithstanding the foregoing, in order to facilitate the transfer of the Property to Consenting Party, and to save additional transfer taxes and other costs, Assignor shall convey and assign the Property directly to Consenting Party on behalf of Assignee.

4.    Notwithstanding the foregoing, in the event the transfer of the Property to Consenting Party from Assignee does not close on or before the date set for closing in the Purchase Agreement, unless such date is extended by written agreement of the parties hereto, this Assignment shall be null and void, but the Purchase Agreement shall remain in full force and effect between Assignor and Consenting Party, without any further obligation or liability on the part of Assignee.

5.    Consenting Party acknowledges that Assignee has not made any covenants, warranties or representations of any kind with regard to the Property (except only to the limited extent set forth in this Assignment) and Consenting Party is not relying on any covenants, representations, warranties or information provided by Assignee. Consenting Party further acknowledges that any covenants, warranties and/or representations as made in the Purchase Agreement or otherwise shall be deemed to be made directly by Assignor to Consenting Party and all rights or remedies arising from a breach thereof shall sought only against Assignor, and shall not be pursued or enforced against Assignee. Any and all covenants, representations and warranties heretofore made by Assignor to Consenting Party and made by Consenting Party to Assignor under the Purchase Agreement shall continue to inure to the benefit of such parties, notwithstanding this Assignment. The parties acknowledge that Assignee is simply acting as an exchange accommodator to facilitate Assignor's tax deferred exchange in structuring the disposition of certain of its property in an exchange. Consenting Party and Assignor hereby release and waive, and at all times will waive, all claims and causes of action against Assignee which arise at any time out of or in connection with this Assignment or the transactions described in this Assignment, except only to the extent of the sole gross negligence or willful misconduct of Assignee.

6.    The parties shall instruct the escrow holder under the Purchase Agreement that at the close of escrow, (a) escrow holder shall name Assignee as seller on its closing statements, (b) escrow holder will deliver the closing statement to Assignee with a copy to Assignor, and (c) escrow holder shall deliver the sales proceeds to Assignee.

7.    This Agreement may be executed in counterparts and shall be of the same force and effect as if one document had been signed by all parties. The obligations of parties comprising assignor are the joint and several obligation of each of them

8.    Notwithstanding anything contained herein to the contrary, nothing contained herein shall affect, modify or waive, in any manner whatsoever, any of the representations, warranties, covenants, obligations; or rights of Assignor or Consenting Party under the Purchase Agreement.

87th Peoria, LLC -1031 Exchange
Relinquished Property: 4341 N. 24th Street, Phoenix, Arizona
Chicago Title Company - Escrow No. CT0801845A

IN WITNESS WHEREOF, the parties hereto have set their hands.

**ASSIGNOR**

**87th PEORIA, LLC,**
**an Arizona limited liability company**

Date: 5/5/08

By: _____
   Khoshrow Zarabi
Its:  Manager

**ASSIGNEE**

**NAMCO FINANCIAL EXCHANGE CORP.,**
**a California corporation**

Date: _____

By: _____
   Hamid Tabb
Its:  Controller

3

87th Peoria, LLC -1031 Exchange
Relinquished Property: 4341 N. 24th Street, Phoenix, Arizona
Chicago Title Company - Escrow No. CT0801845A

**CONSENTING PARTY**

**SILVER DEVELOPMENTS, LLC,**
**An Arizona limited liability company**

Date: _May 15 2008_

By: _A. Hassid_
    Avraham Hassid
Its:   Manager

4

87th Peoria, LLC -1031 Exchange
Relinquished Property: 4341 N. 24th Street, Phoenix, Arizona
Chicago Title Company - Escrow No. CT0801945A

# EXCHANGE FUNDS DISCLAIMER

Once you elect to participate in a tax-deferred Exchange of Real Property, you are agreeing to certain restrictions on the use and release of your exchange funds under Section 1.103 1-(k)-1(g)(6) of the IRS code. A Recent Letter Ruling upheld, and in some cases tightened, the restrictions relating to the use of exchange funds and/or the termination of an exchange. As a Qualified Intermediary, Namco Financial Inc. must adhere to these guidelines an each and every exchange. We have drawn up the following disclaimer as a means for you, our client, to better understand these guidelines, and also to understand why we may or may not be able to disburse funds pursuant to your request. If you have questions regarding these restrictions, please your attorney or tax advisor. We thank you for taking the time to read and approve the following:

1.    Your exchange funds may be used to purchase "Like-Kind" Replacement Property at any time during the 180-day Exchange Period.

2.    During the Exchange Period, you cannot request or withdraw any of your exchange funds from your 1031 account for any purpose other than the process of acquiring "Like-Kind" Replacement Property.

   Unless:

   a.  If you do not identify any property during the 45-day Identification Period, your exchange funds will be available to you on the 46th day or the next business day thereafter. Your funds cannot be returned to you at any time before the 46th day even if you decide not to identify property.

   b.  If you have purchased everything you identified and you are beyond the 45-day Identification Period; all remaining exchange funds will be available to you on the 46th day or the next business day thereafter. (**Please check with your tax advisor regarding the tax consequences of a partial exchange.**)

3.    If, after the 45th day, there is any property you have identified but not acquired, the funds must remain with the Qualified Intermediary until the 181st day or the next business day thereafter.

[Intentionally Left Blank]

5

Exchanger acknowledges and agrees to this Exchange Funds Disclaimer.

**87th PEORIA, LLC,**
**an Arizona limited liability company**

Date: 5/5/08

By: _____

Its:    Khoshrow Zarabi
        Manager

6

# EXHIBIT 3

Legal Tabs Co. 1-800-322-3022

Recycled  Stock # DO-25-SS

2:06 PM
09/10/08
Accrual Basis

# NAMCO FINANCIAL EXCHANGE CORP
## Account QuickReport
### All Transactions

| Type | Date | Num | Name | Memo | Amount | Balance |
|---|---|---|---|---|---|---|
| **300.00 · Accounts Payable** | | | | | | |
| **384.72 · 87th Peoria, LLC** | | | | | | |
| Deposit | 5/8/2008 | | Chicago Title Insurance Company | Proceeds: Escrow # CTO801845A | 873,128.00 | 873,128.00 |
| Credit | 5/8/2008 | | | Exchange Fee | -750.00 | 872,378.00 |
| **Total 384.72 · 87th Peoria, LLC** | | | | | 872,378.00 | 872,378.00 |
| **Total 300.00 · Accounts Payable** | | | | | 872,378.00 | 872,378.00 |
| **TOTAL** | | | | | **872,378.00** | **872,378.00** |

# EXHIBIT 4



**CHICAGO TITLE**
2555 E Camelback Rd, Suite 500, Phoenix, AZ  85016
Phone: (602)667-1046    Fax: (602)667-1086

## BUYER'S ESTIMATED SETTLEMENT STATEMENT

| | |
|---|---|
| **Date:** October 31, 2008 | **Time:** 10:38 AM |
| **Settlement Date:** November 3, 2008 | **Escrow No.:** CT0811716 |
| **Borrower:** 87th Peoria, L.L.C. | **Escrow Officer:** HuffmanD |
| 4341 N. 24th Street | |
| Phoenix, AZ 85016 | |
| **Seller:** Pache Tang, LLC | |
| 726 S. Santa Fe Avenue | |
| Los Angeles, CA 90021 | |
| **Property:** Vacant Land, SWC Indian School Rd & 3rd Ave | |
| Phoenix, AZ | |

| | DEBIT | CREDIT |
|---|---|---|
| **FINANCIAL CONSIDERATION** | | |
| Financial Consideration | | |
| Available 1031 Funds | 3,600,000.00 | |
| Money POC from buyer to seller | | 872,378.00 |
| Purchase Money Note | | 210,000.00 |
| | | 2,700,000.00 |
| **PRORATIONS/ADJUSTMENTS** | | |
| County Taxes | | |
| 07/01/08  to  11/03/08 | | 3,183.17 |
| **ESCROW CHARGES** | | |
| Settlement or Closing Fee          Chicago Title | 992.00 | |
| **TITLE CHARGES** | | |
| Title Insurance                Chicago Title | | |
| ALTA Owner's Policy (06/17/2006) for 3,600,000.00 | 3,505.00 | |
| $4,770.00 | | |
| ALTA Loan Policy (06/17/2006) for 2,700,000.00     $3,505.00 | | |
| n:    tion Fees                 Chicago Title | 100.00 | |
| Courier/Messenger            Chicago Title | 40.00 | |
| **RECORDING CHARGES** | | |
| Recording Fees | 30.00 | |
| **OTHER DEBITS/CREDITS** | | |
| **SUBTOTALS** | 3,604,667.00 | 3,785,561.17 |
| BALANCE DUE FROM BORROWER | | 0.00 |
| BALANCE DUE TO BORROWER | 180,894.17 | |
| **TOTALS** | 3,785,561.17 | 3,785,561.17 |
| ower | | |

Peoria, L.L.C., an Arizona limited liability company

go Title
ment Agent